LINDSAY, Judge.
Defendant, the State of Louisiana through the Department of Transportation and Development (DOTD), appeals a finding of the trial court that defendant was thirty percent at fault in causing a fatal auto accident due to the defective design of the intersection in which the accident occurred. We reverse the trial court judgment.
On May 26, 1982, Mrs. Sue Swint was tragically killed in an automobile accident in Coushatta. The accident occurred in the intersection of Louisiana Highway 179 and *196 U.S. Highway 71. A diagram of the intersection is attached to this opinion. This is a Y-shaped intersection. Southbound traffic on U.S. 71 feeds into the intersection. Motorists desiring to continue south on U.S. 71 proceed on the lefthand portion of the intersection. Louisiana 179 forms the righthand portion of the intersection for motorists proceeding in a southerly direction on Louisiana 179.
The accident occurred near lunch time following a light rain while Mrs. Swint was negotiating the intersection. Mrs. Swint had been proceeding in a southerly direction on U.S. 71 and was entering Louisiana 179 from the southbound lane of U.S. 71. Such traffic must yield to traffic turning left from the northbound lane of U.S. 71 onto Louisiana 179. Mrs. Swint was following a log truck which was also proceeding in a southerly direction from U.S. 71 onto Louisiana 179. The log truck slowed down in the intersection to allow a preceding vehicle to make a U-turn. Mrs. Swint hit the slow moving log truck from the rear, suffered severe chest injuries and was pronounced dead on arrival at the Schumpert Hospital in Shreveport.
She was survived by her husband, Thomas Swint, Sr., and three sons, Thomas Swint, Jr., 19, Steven Swint, 15, and Scott Swint, 10. Thomas Swint, Sr. filed individually and on behalf of the minor children for the wrongful death of Mrs. Swint and also filed a survivor action for Mrs. Swint’s pain and suffering prior to her death. Thomas Swint, Jr. sued on his own behalf.
Defendants were the driver of the log truck, Murray Toms, III, the owner of the truck, Murray Toms, Jr., the insurer of the truck, Progressive American Insurance Company, and the State of Louisiana through the Department of Transportation and Development. All defendants except the State settled with plaintiffs prior to trial.
A bench trial was held November 15, 1984. At the trial, the engineer who designed the intersection testified the design was based on the Manual on Uniform Traffic Control Devices and the American Association of State Highway Officials Policy dealing with geometric design.
The engineer testified that the intersection was designed to channelize traffic for a safer and more orderly traffic flow. Pri- or to the design and construction of the various traffic control devices in the intersection, there was virtually no regulation of traffic attempting to negotiate this intersection, which is one of the major intersections in the Town of Coushatta.
Plaintiffs presented the testimony of an eyewitness to the accident as well as numerous lay witnesses who offered opinion testimony that the intersection was made more hazardous by the design and modifications made by the DOTD prior to this accident.
In a judgment filed April 18, 1985, the trial court found the State to be thirty percent at fault in causing the accident because the design and construction of the intersection created an unreasonable risk of harm to the motoring public. The trial court found the design of the intersection to be hazardous because drivers proceeding in the direction Mrs. Swint was traveling must yield to traffic approaching from the left and therefore must avert their eyes from the roadway ahead and look to the left and to the rear to detect traffic approaching from the left. The trial court also based its finding that the intersection was hazardous upon the fact that faster moving traffic must yield to slower moving traffic. The trial court apparently found that traffic proceeding in the direction traveled by the decedent entered the intersection while traveling at 45 m.p.h. The trial court also found that according to a DOTD survey, a greater number of vehicles was required to yield to a lesser number,[1] and that “yield ahead” signs warning approaching motorists of the need to yield ahead were obscured. The trial court also cited *197 as a reason for its decision, the DOTD failure to conduct a follow-up survey after modifications were made to the intersection. Damages were awarded to the plaintiffs in the amount of $135,655.44.
Defendant appealed s'uspensively, arguing the trial court erred in finding defendant to be at fault in causing the accident. Defendant argues the accident occurred during a light rain, during a period of heavy traffic, and the decedent had a yield sign before entering Louisiana 179. Defendant further argues the only cause in fact of this accident was the negligence of the decedent in hitting the log truck from the rear in light of all the cautionary conditions facing her at the time and place of the accident. Defendant contends that the only testimony offered by plaintiff to prove the intersection was unreasonably dangerous was the testimony of the lay witnesses offering opinions that the intersection was dangerous.
The plaintiff-appellees did not appeal asking for an increase in the award. They argue that the negligence of the DOTD in improperly designing and constructing this intersection was sufficiently shown at trial.
The issue before us is whether the trial court was clearly wrong in finding the DOTD to be thirty per cent at fault in causing this accident. Causation is a question of fact and the trial court’s determination of the issue should not to be overturned absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). In the instant case, after a full review of the record, we find that the trial court was clearly wrong in finding the DOTD at fault in causing this accident and we reverse the trial court judgment.
The DOTD has a duty to see that highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Smith v. Department of Transportation and Development, 412 So.2d 685 (La.App. 2d Cir.1982), writ denied 413 So.2d 907 (La.1982).
The DOTD may be strictly liable for an accident caused by a defective condition of a roadway if it is shown that 1) the thing is in the care and custody of the DOTD, 2) there was a vice or defect in the thing, and 3) the injury was caused by the defect. LSA-C.C. Art. 2317; Entrevia v. Hood, 427 So.2d 1146 (La.1983); Smith v. Department of Transportation and Development, supra; McKinnie v. Department of Transportation and Development, 426 So.2d 344 (La.App. 2d Cir.1983), writ denied 432 So.2d 266 (La.1983); Beeson v. State, Through Department of Transportation and Development, 400 So.2d 278 (La.App. 3rd Cir.1981); Usry v. Louisiana Department of Highways, 402 So.2d 240 (La. App.4th Cir.1981), writ denied 404 So.2d 1259 (La. 1981).
The DOTD may also be held liable for negligence if it is shown that a hazardous condition existed with the roadway, the DOTD had actual or constructive knowledge of the condition, and the DOTD failed to correct it within a reasonable period of time. LSA-C.C. Art. 2315; Smith v. Department of Transportation and Development, supra; Edwards v. Department of Transportation and Development, 403 So.2d 109 (La.App. 3rd Cir.1981), writ denied 407 So.2d 733 (La.1981); Usry v. Louisiana Department of Highways, supra; McKinnie v. Department of Transportation and Development, supra.
A defect has been defined as some flaw or fault inherent with the thing itself which causes an unreasonable risk of harm to others. McKinnie v. Department of Transportation and Development, supra. Defects which are not in the nature of traps, or from which danger cannot be reasonably anticipated, provide no actionable negligence. Liability will be imposed only when the defect is dangerous and calculated to cause injury. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975). Whether a dangerous defect existed can be determined by asking whether the public way was constructed and maintained in a reasonably safe condition for persons exercising ordinary care *198 and prudence. Pickens v. St. Tammany Parish Police Jury, supra.
In this case, plaintiff failed to show that this intersection was defective or posed an unreasonably hazardous condition to a person exercising ordinary care and reasonable prudence. Before construction of this intersection, northbound traffic turning left from U.S. 71 onto La. 179 and traffic turning right from La. 179 to southbound U.S. 71 proceeded in a disorderly and haphazard fashion across a wide expanse of asphalt between the two highways.
Because of the traffic hazard created by this intersection, the Town of Coushatta made a written request to the DOTD on April 16, 1979 to redesign the intersection to correct the existing traffic problem. Mr. Walter Reed, the DOTD traffic engineer, testified that in response to this request a survey was made of traffic needs at the intersection and that he designed the channelization at the intersection to provide for a safe and orderly traffic flow. The design of the intersection was in accordance with highway construction manuals used in this state and throughout the United States.
Mr. Reed testified that prior to construction, the intersection design was temporarily laid out with traffic cones, the traffic was observed for an entire day, and necessary adjustments to the design were made. Traffic proceeding in the direction traveled by the decedent was warned of the yield ahead well before entering the intersection and two yield signs were present in the intersection itself. There is nothing in the record indicating that any of these signs were in any manner obscured. The record clearly shows that there was nothing to obscure the decedent’s view of traffic proceeding ahead of her and she had ample notice of the need to yield to any traffic which might have been approaching from the left. Mrs. Swint was amply warned and should have seen the need to slow or bring her vehicle to a complete stop, not only to allow traffic approaching from the left to pass, but also to avoid rear end collisions with preceeding vehicles. It should also be noted that the record does not indicate there was any traffic approaching the intersection from the left and the requirement of yielding to traffic entering the intersection from the left was not a factor in causing this accident.
The trial court finding that traffic enters this intersection at a speed of 45 m.p.h. is not supported. The “yield ahead” sign provides ample opportunity for a motorist to slow the vehicle and bring it under control as he begins to negotiate the intersection.
The plaintiffs did not show that the design of the intersection which requires a greater number of vehicles to yield to the lesser number was in any way a cause of this accident, nor did they demonstrate the need for a follow-up survey by the DOTD.
Plaintiffs failed to prove that the intersection was defectively constructed. The only evidence offered by the plaintiffs regarding this intersection was lay testimony from persons acquainted with the decedent who offered opinion testimony that the intersection posed an unreasonable risk of harm. While the trial court did not err in allowing the introduction of such testimony, it is simply unconvincing. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.1984), writ denied 458 So.2d 476 (La.1984). Although the lay witnesses stated that in their opinions the modifications made the intersection more dangerous, most of these witnesses had not seen any accidents at this point and none could testify as to specific instances in which accidents had occurred.
The record indicates this intersection was constructed according to accepted traffic control standards and that the intersection could be negotiated safely with the exercise of ordinary care. Therefore, this intersection was not defective and did not pose an unreasonable risk of harm to motorists.
The record before this court indicates this was a rear-end collision case. When a following vehicle collides with a preceding vehicle, the following motorist is presumed to be negligent and must exculpate himself. McAllister v. Ruffin, 451 *199 So.2d 686 (La.App. 2d Cir.1984); Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir.1982). Plaintiffs here failed to overcome the presumption that Mrs. Swint was negligent and that her negligence was the sole cause of this accident.
The decedent was amply warned of the necessity to yield to traffic approaching from the left and the need to adequately slow her vehicle and keep a proper lookout, not only to the side, but to the front.
The record indicates Mrs. Swint had lived in Coushatta for many years and was familiar with this intersection, having been through it countless times. The record indicates that immediately prior to the accident Mrs. Swint may have diverted her attention from the roadway to persons on the roadside with whom she was acquainted. These factors lead to the inescapable conclusion that the negligence of Mrs. Swint was the sole cause of this accident.
For the above stated reasons, the trial court judgment finding defendant, Louisiana Department of Transportation and Development, to be thirty percent at fault in causing this accident is reversed. Costs of this litigation are assessed to the plaintiffs.
REVERSED.
*200 [[Image here]]

. According to the DOTD survey on one day, 1,569 vehicles switched from the southbound lane of U.S. 71 to La. 179 as opposed to 539 vehicles turning left from the northbound lane of U.S. 71 onto La. 179.